FEDERAL LAND BANK OF OMAHA, APPELLANT, V. LYDIA M. PLUMER, APPELLEE.

297 N. W. 541

FILED APRIL 9, 1941. No. 30978.

*Franklin L. Pierce, Philip M. Wellman, William W. Graham* and *Moran & James,* for appellant.

302

*William H. Pitzer* and *Marshall Pitzer, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

ROSE, J.

The question for determination is whether Lydia M. Plumer, defendant, bound her separate estate for the payment of a 25,000-dollar loan procured by her from the Federal Land Bank of Omaha, plaintiff. The loan was evidenced by a note for that amount and secured by a mortgage on the east 320 acres of section 7, township 8 north, range 12, Otoe county. Both instruments were dated February 24, 1927, and signed by Lydia M. Plumer and her husband, Lee E. Plumer, the former name above the latter. For defaults in payments of debt and interest due on the mortgage, the district court for Otoe county, at the suit of plaintiff, decreed foreclosure May 11, 1937. Under the decree the sheriff sold the mortgaged land to plaintiff December 5, 1938, and the sale was confirmed December 9, 1938. The debt, interest and costs exceeded the purchase price to the extent of $10,425.83. For this deficiency plaintiff sought by motion to recover a judgment against Lydia M. Plumer. The issues of coverture and of personal liability of the wife for the deficiency were raised by pleadings. The trial court heard the parties at length, made findings in favor of Lydia M. Plumer and overruled the motion for a deficiency judgment. Plaintiff appealed.

Plaintiff contends that defendant, Lydia M. Plumer, procured the loan personally and secured it by mortgage on her own land; that she incurred the debt in the course of her separate business or occupation and on the faith and credit of her separate property; that she contracted the debt with reference to farming in which she was engaged on her own account at the time she borrowed the $25,000 from plaintiff; that the evidence so proves and that the judgment to the contrary cannot be permitted to stand. Plaintiff relies on proof of these facts and on the following provisions of statute:

"A married woman, while the marriage relation subsists, may bargain, sell and convey her real and personal property, and enter into any contract with reference to the same in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property." Comp. St. 1929, sec. 42-202.

"Any married woman may carry on trade or business, and perform any labor or services on her sole and separate account; and the earnings of any married woman, from her trade, business, labor, or services, shall be her sole and separate property, and may be used and invested by her in her own name." Comp. St. 1929, sec. 42-203.

In support of the judgment below counsel for Lydia M. Plumer, defendant, calls attention to the statute which provides:

"The property, real and personal, which any woman in the state may own at the time of her marriage, and the rents, issues, profits, or proceeds thereof, and any real, personal, or mixed property, which shall come to her by descent, devise, or the gift of any person except her husband, or which she shall acquire by purchase or otherwise, shall remain her sole and separate property, notwithstanding her marriage, and shall not be subject to disposal of her husband, or liable for his debts." Comp. St. 1929, sec. 42-201.

In connection with the law thus quoted, reference is made by counsel for defendant to evidence tending to prove the following facts: The note and mortgage were signed by both wife and husband. The land mortgaged was the husband's estate by title from his parents, not from her parents. He conveyed it to his wife by deed June 21, 1919, without consideration. The deed was recorded without her knowledge June 23, 1919. She never had possession of the deed. The title was reconveyed by her to her husband February 20, 1928, without consideration. Plaintiff was notified of the transfer. The husband, Lee E. Plumer, assumed the mortgage and requested notice of maturing instalments of the debt. The wife, Lydia M. Plumer, never made any payments on the note or mortgage nor was she

ever asked to do so. She testified that in executing the note and the mortgage she had no intention of charging her separate estate with the debt evidenced by the note; that she understood her separate estate to be property in her own name and that she did not consider the mortgaged land a part of her separate estate. Neither the note nor the mortgage executed by defendant contained a clause binding her separate estate for repayment of the loan. Defendant was in possession.

From testimony tending to prove the facts outlined and from documentary evidence of similar import, counsel for defendant argue that inquiry of defendant while in possession of the land would have elicited knowledge that the property mortgaged did not belong to her separate estate and that the real owner was her husband, Lee E. Plumer; that plaintiff did not rely on her ownership of the property as security or look to her separate estate for payment of the note and mortgage; that she held title for her husband to procure a loan for payment of his debts; that the land was his; that he was the principal debtor, his wife at most a surety, binding herself only to the extent of her interest in the identical land encumbered by the mortgage.

The position thus taken is defended by impressive argument, but the evidence on the other side of the controversy also must be examined before a conclusion is reached. Where the contract of a married woman does not in express terms bind her separate estate for payment of a debt partially secured by a mortgage in which she is a mortgagor, the question of her intention to do so, if put in issue by pleadings in a foreclosure suit, must be determined as a fact from all the evidence and the surrounding circumstances. *Fidelity & Deposit Co. v. Lapidus,* 136 Neb. 473, 286 N. W. 386. It is shown by the evidence that when Lydia M. Plumer, defendant, applied to plaintiff for her loan February 2, 1927, and when she signed the note and the mortgage February 24, 1927, she was individually engaged in farming on her own account and in her own name. In that enterprise she owned extensive farm lands

and farming implements. She herself engaged tenants and collected rents, sold her crops and received checks in payments. The title to the mortgaged land stood in her own name on the public records from the time she acquired it in 1919 until she reconveyed it to her husband February 20, 1928. The record contains nothing to indicate her husband was not free to transfer this land to his wife as a gift in 1919. The application to plaintiff for the loan was made by defendant herself in her individual name. She offered her 320 acres of land as security for the 25,000-dollar loan. In the application she made in substance the following statements over her own signature: Was in possession of the land; knew of no claims that might give rise to any adverse claim of possession; indebtedness incurred for agricultural purposes totaling $22,200 owing to the Union Central Life Insurance Company, Farmers Bank of Dunbar and Otoe County National Bank, to be paid with proceeds of loan; occupation or business, farming; owned 4,280 acres of land valued at $312,000; owned farming implements sufficient to farm 800 acres; income from lands for 1925, $12,000. The statements in the application were guaranteed to be true and correct. The loan was granted. The following facts are also shown by the evidence: From the proceeds of the loan plaintiff deducted $1,250 for land bank stock and drew its check payable to "Lydia M. Plumer and A. E. Stocker, Secy, Treas." for $23,750. The check was indorsed by both payees and deposited in the Otoe County National Bank to the credit of "Lydia & Lee Plumer," less $250 for association charges, a credit of $23,500. From funds in this deposit two or three notes owing by Lee E. Plumer to the Otoe County National Bank were paid and individual notes aggregating $16,360 owing by Lydia M. Plumer to the Otoe County National Bank were also paid from the same funds. Among them was a note for $14,260, signed alone by her. She testified, however, that it was given to take up an indebtedness of her husband. It was nevertheless her obligation to the bank. She testified also that she did not get any proceeds of the

other notes or of the loan. This testimony was given after the spirited controversy over her personal liability for the 25,000-dollar debt arose. Previous documentary evidence over her own signature that her loan was procured for her agricultural purposes still remains.

It would be ascribing too much to foresight to infer from the facts and circumstances of this case that the husband deeded his 320 acres of land to his wife June 21, 1919, for the purpose of enabling her to procure for him a loan February 24, 1927. She made use of her title, possession and ownership to procure the loan in her own name as evidenced by her statements over her own signature. It seems more reasonable to infer that her title was absolute as it was used by her and as shown by the public records and by her own conduct. An inference that inquiry of her, while in possession of the land before the loan was made, would have elicited the fact that her husband was the real owner is not warranted by the circumstances. Such a disclosure would quite likely have prevented the loan. It seems more logical to infer that inquiry would have elicited what is stated in her application.

Examination and consideration of all the oral testimony and the documentary proofs lead to the conclusion that the preponderance of the evidence requires findings that Lydia M. Plumer, defendant, owned in her own name and in her own right the 320 acres of land described in the mortgage when executed; that she contracted the debt evidenced by the note with reference to her separate property and with reference to her own trade or business; that she intended to bind her separate estate for payment of the note and mortgage and did so.

The legislative act of 1933, taking from the district courts the power to enter a deficiency judgment in a suit to foreclose a mortgage, does not apply to the present case for the reason the mortgage was executed before that restriction was imposed and was not then due nor in litigation. Comp. St. Supp. 1939, sec. 20-2141; *Filley v. Mancuso*, 135 Neb. 403, 281 N. W. 850.

The judgment is reversed and the cause remanded to the district court, with directions to enter a deficiency judgment in favor of plaintiff and against Lydia M. Plumer, defendant, for the deficiency shown by the record as it now stands.

REVERSED.